# FOR PUBLICATION

FILED & ENTERED

MAR 22 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>Advanced Biomedical, Inc.<br><br>Debtor(s).<br><br>Specialty Laboratories Inc.<br><br>Plaintiff(s),<br>v.<br><br>Advanced Biomedical, Inc.<br><br>Defendant(s). | CHAPTER 11<br><br>Case No.: 8:14-bk-15938-MW<br>Adv No:  8:14-ap-01275-MW<br><br>**MEMORANDUM DECISION AND ORDER**<br><br>Date:        November 20, 2015<br>Time:       9:00 a.m.<br>Courtroom: 6C |

Timothy C. Aires of Aires Law Firm for Specialty Laboratories Inc.; Robert Sabahat and Dixon Gardner of Madison Harbor, ALC for Advanced Biomedical, Inc.; and Jolene Tanner, Assistant United States Attorney, Sandra R. Brown, Assistant United States Attorney Chief, Tax Division, and Eileen M. Decker, United States Attorney, for the United States of America on behalf of its agency, the Internal Revenue Service.

-1-

**WALLACE, J.**

This matter came on for trial on November 20, 2015. Plaintiff Specialty Laboratories Inc. ("Plaintiff") commenced this adversary proceeding by filing a complaint on October 14, 2014 seeking a declaratory judgment that it is the owner of, and holds title to, all or a portion of certain accounts receivable and proceeds thereof scheduled by Advanced Biomedical, Inc., chapter 11 debtor and debtor in possession (the "Defendant" or "Defendant-Debtor"). Defendant contends that it is the owner of, and holds title to, all such personal property.

## PRE-BANKRUPTCY LITIGATION BETWEEN PLAINTIFF AND DEFENDANT

In December 2013 Defendant and Plaintiff stipulated to the entry of a judgment in the Superior Court of the State of California, County of Orange, against Defendant in the amount of $227,386.99. This stipulation was approved by the Honorable Sheila Fell, Judge of the Superior Court, on January 10, 2014. Several days later, on January 15, 2014, Plaintiff filed a Notice of Judgment Lien against Defendant in the amount of $227,386.99 with the California Secretary of State. Thereafter, on September 25, 2014, Judge Fell signed an Assignment Order Re: Rights to Payment of Money Due or to Become Due (the "Assignment Order"). The Assignment Order was electronically filed on that same day (September 25, 2014) in the records of the Superior Court of California, County of Orange.

The Assignment Order provides in relevant part as follows:

> IT IS HEREBY ORDERED that the interest, if any, of . . . [Defendant] . . . in its rights to payment of money due or to become due, whether styled accounts receivable, general intangibles, accounts, deposit accounts, royalties, fees, commissions, or otherwise, from its activities as a provider of clinical laboratory services to physicians, clinics, hospitals, and other healthcare providers, whether standing in the name of "Advanced Biomedical Inc." or "Pathology Laboratory Services", and from or through any business entity or person which they are affiliated . . . is assigned to [Plaintiff] . . . to the extent necessary to satisfy the judgment entered in this action in full, which as of September 3, 2014, is $242,320.07.

Six days after the Assignment Order was entered, on October 1, 2014, Defendant filed a voluntary petition under chapter 11 of the Bankruptcy Code.[1]

## PRE- AND POST-TRIAL PROCEEDINGS IN THIS COURT

As indicated above, Plaintiff commenced this adversary proceeding on October 14, 2014 by filing a complaint against Defendant. Plaintiff filed a First Amended Complaint that appears as Docket No. 16, filed January 8, 2015 (the "First Amended Complaint"). In its First Claim for Relief, Plaintiff asks the Court to enter a judgment, order or decree determining that Plaintiff is the owner of the receivables assigned to it pursuant to the Assignment Order (the "Assigned Receivables"). The Second Claim for Relief is pled in the alternative, namely, that if the Court determines that Plaintiff is not the Assigned Receivables' owner, the Court is asked to determine that Plaintiff is a judgment lien creditor with a security interest in the Assigned Receivables.

One of Defendant's major arguments is that the attachment of certain Internal Revenue Service ("IRS") tax liens to all or virtually all of Defendant's property prior to the entry of the Assignment Order as a matter of law prevented the Assignment Order from taking effect, with the result that the Assigned Receivables remain property of the bankruptcy estate (albeit subject to the IRS tax liens and whatever rights, if any, Plaintiff may have as a secured creditor with respect to the Assigned Receivables). At the heart of Defendant's argument is the contention that property subject to the IRS liens cannot be transferred.

The Court was and is very skeptical that the attachment of an IRS lien to an item of property effects a restraint on alienation preventing the transfer of such property, believing that the analysis more likely to be correct is that such property can be transferred, but the transferee takes the property subject to the IRS lien. However, shortly after the trial the United States of America (the "Government") sought to intervene in this case on behalf of the IRS. The Court permitted, and in fact, welcomed

---

[1] 11 U.S.C. §§ 101-1532.

-3-

such intervention because the Court believed it would be very beneficial to the have the benefit of the IRS's views on whether property subject to an IRS lien can be transferred or, alternatively, whether such lien prevents any transfer of the property. The parties briefed these issues at the Court's request and a hearing was held on March 16, 2016. Having reviewed such briefs, the Court is now in a position to issue its findings of fact and conclusions of law and to finally determine the matters tried last November.

This Memorandum Decision and Order constitutes the Court's findings of fact and conclusions of law in this matter as required by Federal Rule of Bankruptcy Procedure 7052 (incorporating Federal Rule of Civil Procedure 52 with certain modifications). In response to inquiries of the Court made on the date of trial, Plaintiff and Defendant each waived trial by jury and each expressly consented to this Court's final determination of this case under the rule of *Stern v. Marshall*, 564 U.S. 462, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011) and *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 191 L. Ed. 2d 911 (2015).

### GOVERNING BANKRUPTCY AND CALIFORNIA LAW

When Defendant filed its bankruptcy petition on October 1, 2014, all of Defendant's legal or equitable interests in property held on that date became property of Defendant's bankruptcy estate by operation of bankruptcy law. 11 U.S.C. § 541(a). However, if Defendant did not hold an interest in property on October 1, 2014 because it had transferred or otherwise lost title to such property prior to the October 1, 2014 case commencement date, such property did not become bankruptcy estate property. *In re Quade*, 482 B.R. 217 (Bankr. N.D. Ill. 2012), *aff'd in part*, 498 B.R. 852 (N.D. Ill. 2013) (property interests that have been indefeasibly transferred prepetition do not become property of debtor's bankruptcy estate).

Threshold questions about the existence and scope of a debtor's interest in property are resolved by reference to applicable state law. *Butner v. United* States, 440 U.S. 48, 54, 99 S .Ct. 914, 917, 59 L. Ed. 2d 136 (1979); *State of California v. Farmers Markets, Inc. (In re Farmers Markets, Inc.)*, 792 F.2d 1400, 1402 (9th Cir. 1986);

*Chappel v. Proctor (In re Chappel)*, 189 B.R. 489, 491-92 (B.A.P. 9th Cir. 1995). Accordingly, the Court looks to applicable California law to determine whether title to the Assigned Receivables had been effectively transferred to Plaintiff prior to October 1, 2014 or, alternatively, whether under California law Defendant still held title to the Assigned Receivables on the October 1, 2014 petition date. The key issue is whether the Assignment Order effectively divested Defendant of all right, title and interest in and to the Assigned Receivables prior to the October 1, 2014 petition date.

## GENERAL EFFECTIVENESS OF THE SUPERIOR COURT'S ASSIGNMENT ORDER

The assignment of accounts receivable in satisfaction of a creditor's judgment is governed by California Code of Civil Procedure section 708.510. Section 708.510 appears in Article 6, entitled "Assignment Order," of Chapter 6, entitled "Miscellaneous Creditors' Remedies," of Division 2, entitled "Enforcement of Money Judgments," of Title 9, entitled "Enforcement of Judgments," of Part 2, entitled "Of Civil Actions" of the California Code of Civil Procedure. The Court cites this organizational structure of the California Code of Civil Procedure to support its conclusion that section 708.510 is directly relevant in this matter, relating as it does to civil actions, enforcement of judgments, enforcement of money judgments, miscellaneous creditors' remedies and assignment orders.

Section 708.510 provides in relevant part as follows:

> **§ 708.510. Application for Order for Assignment to Judgment Creditor of Right to Payment Due or to Become Due to Judgment Debtor.**
>
> (a) Except as otherwise provided by law, upon application of the judgment creditor on noticed motion, the court may order the judgment debtor to assign to the judgment creditor . . . all or part of a right to payment due or to become due, whether or not the right is conditioned on future developments . . .
> \*       \*       \*       \*
> (d) A right to payment may be assigned pursuant to this article only to the extent necessary to satisfy the money judgment.

With the exception of one matter discussed immediately below, the Assignment Order satisfies on its face all the requirements and prerequisites of section 708.510(a) and (d). The Assignment Order recites that it was issued in response to a noticed motion ("with proof of service having been made") brought by Plaintiff. The Superior Court assigned to Plaintiff all rights to payment due or to become due, but only to the extent necessary to satisfy the money judgment of $242,320.07. No doubt exists that Plaintiff is a "judgment creditor" within the meaning of section 708.510(a).

Note, however, that section 708.510(a) states "the court may order the <u>judgment debtor to assign to the judgment creditor</u>" (underscoring added by the Court); it does not state that the court may directly assign the receivables held by the judgment debtor to the judgment creditor. Does the fact that the Superior Court directly assigned the Assigned Receivables to Plaintiff as opposed to ordering the Defendant to make this assignment create an infirmity in the Assignment Order and undermine Plaintiff's contention that it is the owner of, and holds title to, the Assigned Receivables? Upon a review of the applicable California authorities, the Court concludes that no such infirmity is created and that the Assignment Order is a valid and effective order and that it transferred ownership of the Assigned Receivables to Plaintiff prior to the October 1, 2014 date on which Defendant filed its voluntary chapter 11 petition.

The key California decision supporting the Court's conclusion is *Weingarten Realty Investors v. Chiang*, 212 Cal. App. 4th 163 (4th Dist. 2012), a case cited and heavily relied upon by each of the parties in this action. In *Weingarten Realty Investors,* cash from various accounts and two companies' stock (the "Escheated Property")[2], formerly property of judgment debtor Novadyne Computer Systems, Inc. ("Novadyne"), had escheated to the State of California. In August 2010, the Sacramento Superior Court directly assigned the Escheated Property – which was then held by the

---

[2] As a technical matter, abandoned personal property is not the subject of escheat. Rather, sovereigns take title to abandoned personal property as *bona vacantia*. *See Delaware v. New York*, 507 U.S. 490, 497; 113 S. Ct. 1550, 1555; 123 L. Ed. 2d 211, 219-220 (1993). Here, the Court employs the technically erroneous but more familiar term of "escheat."

-6-

California's Unclaimed Funds Division – to judgment creditor Weingarten Realty Investors ("Weingarten") pursuant to California Code of Civil Procedure section 708.510. 212 Cal. App. 4th at 166-167. Weingarten filed a claim with the California State Controller (the "Controller") to recover the Escheated Property. The Controller rejected the claim on the ground that Weingarten was not the Escheated Property's owner. Weingarten brought an action in San Diego Superior Court to recover the Escheated Property, and the San Diego Superior Court granted summary judgment in Weingarten's favor. The Controller then appealed to the California Court of Appeal, Fourth District.

The first segment of the Court of Appeal's decision in favor of Weingarten addresses the effectiveness of the assignment order entered by the Sacramento Superior Court under section 708.510. The Court of Appeal stated as follows: "As an initial matter, we note that while the order on its face appears to directly assign the subject property [i.e., what this Court has termed the "Escheated Property"] to Weingarten, the superior court could only assign Novadyne's interest in the property or 'right to payment due.' See § 708.510(a). We presume this is what the court intended and note that no prejudice resulted from the wording of the order because Weingarten proceeded as if it had only those rights that Novadyne had to recover the property from the Controller." 212 Cal. App. 4th at 167. The Court of Appeal later went on to hold that escheating of property under California law transfers title to the escheated property to the Controller, subject to the right of the former owner to recover such property by filing a claim with the Controller. 212 Cal. App. 4th at 168 ("title vests in the state 'subject to the right of claimants to appear and claim the escheated property'").

The Court of Appeal's decision in *Weingarten Realty Investors* goes one step beyond the distance this Court is required to go. Not only did the Court of Appeal fail to find any problem with deeming the order to directly assign Novadyne's rights to Weingarten or with giving full effect to such assignment, it does not appear to have seen any incurable infirmity in the Sacramento Superior Court's order directly assigning the

Escheated Property to judgment creditor Weingarten (treating such order as an assignment of judgment debtor Novadyne's rights in the Escheated Property). If the California Court of Appeal strictly interpreted section 708.510(a) to limit a superior court's authority to ordering a judgment debtor to transfer property to the judgment creditor, it would have found the Sacramento Superior Court's order to be invalid because such order purported to directly transfer the Escheated Property to Weingarten – as opposed to ordering Novadyne to transfer the rights to recover the Escheated Property to Weingarten. To conclude, just as the California Court of Appeal saw no defect in a section 708.510 order directly transferring Novadyne's rights to Weingarten (and, indeed, <u>deeming</u> the order to so provide), so this Court sees no defect in the Assignment Order's provision transferring title to the Assigned Receivables to Plaintiff.

Defendant's contention that *Weingarten Realty Investors* supports its position that the Assignment Order is invalid misconstrues the decision. Novadyne did not have title to the Escheated Property, such title being held by the Controller under California law. Rather, Novadyne had a right to file a claim with the Controller for the return of the Escheated Property. The Court of Appeal held that this right was validly transferred to Weingarten under section 708.510(a) under the Sacramento County Superior Court's order. In this case, the correct analogy to the right to file a claim in *Weingarten Realty Investors* is title to the Assigned Receivables, not to the cash that ultimately will be paid over by the receivable's obligor in satisfaction of the receivable. The Assignment Order transferred Defendant's title to the Assigned Receivables to Plaintiff, a conveyance every bit as effective as the Sacramento County Superior Court's order transferring the right to file a claim with the Controller from Novadyne to Weingarten.

**THE EFFECT OF PRE-EXISTING IRS LIENS ON THE EFFECTIVENESS OF THE ASSIGNMENT ORDER**

It is undisputed that certain Internal Revenue Service tax liens attached to the Assigned Receivables (and became perfected by the filing and recording of Notices of Federal Tax Lien) prior to the entry of the Assignment Order. Defendant strenuously

-8-

1  argued at trial that the attachment and perfection of such liens precluded the Orange
2  County Superior Court from transferring title to the Assigned Receivables to Plaintiff via
3  the Assignment Order.  As stated earlier, the United States of America on behalf of the
4  Internal Revenue Service asked the Court to intervene in this case to argue this very
5  point.  The Court permitted such intervention, allowed the parties to file briefs and held a
6  hearing on this issue on March 16, 2016.

7        The Government's brief is mostly devoted to arguments that the IRS's tax liens
8  have priority over Plaintiff's interest in the Assigned Receivables.  The Government's
9  only argument that the tax liens' existence prevented the transfer of title to the Assigned
10 Receivables to Plaintiff pursuant to the Assignment Order is that the Government
11 received no notice of the Orange County Superior Court proceeding in which the
12 Assignment Order was entered.  Citing *In re Levoy*, 182 B.R. 827 (B.A.P. 9th Cir. 1995),
13 the Government argues that the absence of notice invalidates the Assignment Order.
14 *Levoy* is a case where the debtor objected to various proofs of claim filed by the IRS.
15 The Government failed to appear at the hearing on the claim objections, and the
16 bankruptcy court sustained the objections.  More than one year later, the Government
17 filed a motion to vacate the order sustaining the objections on the ground that the
18 bankruptcy court lacked jurisdiction because of improper service of the claim objections.
19 The bankruptcy court denied the motion on the ground that the Government had
20 submitted to the court's jurisdiction by filing proofs of claim and the Government had
21 sufficient notice of the claim objections.  The Government appealed, and the Bankruptcy
22 Appellate Panel for the Ninth Circuit affirmed the bankruptcy court.  In its decision, the
23 Bankruptcy Appellate Panel stated black letter law that defective notice may result in a
24 court's lack of jurisdiction over the parties.  It is this portion of the *Levoy* opinion that the
25 Government relies upon here.

26       The obvious distinction between *Levoy* and the Orange County Superior Court
27 proceeding is that whereas the IRS's rights were vastly affected by the claim
28 disallowance order in *Levoy*, nothing in the Assignment Order mentions the IRS or in

-9-

1 any way affects or purports to affect the IRS's rights.  In the absence of any showing by

2 the Government that the Assignment Order affected the IRS's lien rights or that the

3 existence of an IRS lien prevents the transfer of title to property in general (in effect, that

4 such lien creates a restraint on alienation) or the transfer of title to the Assigned

5 Receivables in particular, the Court rejects this collateral attack on the Assignment

6 Order.

**STATE COURT JURISDICTION REQUIRED TO SUPPORT AN ASSIGNMENT ORDER UNDER SECTION 708.510**

9 Defendant contends that the Assignment Order fails to transfer the Assigned

10 Receivables to Plaintiff because the obligors with respect to such receivables were not

11 under the jurisdiction of the Orange County Superior Court and that a state court order

12 cannot affect property outside its jurisdiction (i.e., that there was neither *in rem* nor *in*

13 *personam* jurisdiction).  However, nowhere is it stated in section 708.510 that the

14 obligor under a receivable must be under the state court's jurisdiction in order for an

15 assignment order entered with respect to such receivable to be effective as to the

16 judgment debtor and judgment creditor.  Section 708.510(b) requires that a motion for

17 an assignment order must be served on the judgment debtor personally or by mail.

18 Under the maxim *expressio unius est exclusio alterius*, the California legislature's failure

19 to add receivable obligors to the list of parties required to be served creates a solid

20 inference that no service on such obligors is required in order for an assignment order

21 to be effective as against a judgment debtor.  Further support for this interpretation is

22 provided by section 708.540, providing that an assignment order does not affect an

23 obligor's rights until the obligor receives notice of the assignment order.  The mere fact

24 that an assignment order may not be effective against a particular obligor (or even all

25 obligors) because of lack of notice to them does not alter the effectiveness of the order

26 against the judgment debtor.  If the California legislature had required notice to obligors

27 as a condition precedent to the effectiveness of an assignment order against the

28 judgment debtor, presumably it would have added a provision to this effect in section

-10-

708.540 or elsewhere in Article 6.  The absence of such a requirement in Article 6 strongly implies that no such requirement exists, and the Court so finds.

## EFFECT OF RESTRAINING ORDER PROVISION
## IN SECTION 708.520

California Code of Civil Procedure section 708.520, which is part of Article 6, provides that the superior court may, upon a showing of need, issue an order restraining a judgment debtor from assigning or otherwise disposing of a right to payment sought to be assigned.  Defendant argues that if an assignment order under section 708.510 is absolute and self-executing, then the restraining order provision of section 708.520 is unnecessary and superfluous.  From this Defendant argues that section 708.510 is not and cannot be self-executing and absolute.  These arguments lack merit because (1) litigants do not always and everywhere obey court orders adverse to them, and (2) a section 708.520 restraining order is available only upon a showing a good cause.  If a judgment creditor had reason to believe that a judgment debtor intended to walk out of court after an assignment order had been entered and to fraudulently "sell" the assigned receivables to some unsuspecting person or to immediately mail out letters to the obligors informing them that the account payable (receivable) was forgiven, that presumably would be good cause for a state court to issue a restraining order under section 708.520.  Clearly, then, a restraining order can play an important role in ensuring the effectiveness of a self-executing and absolute assignment order.  The existence of a restraining order procedure under section 708.520 in no way supports an argument that an assignment order is not absolute and self-executing.

## DEFENDANT CEASED TO OWN THE ASSIGNED RECEIVABLES AT THE TIME
## THE ASSIGNMENT ORDER BECAME EFFECTIVE

Defendant cites *In re GOCO Realty Fund I*, 151 B.R. 241 (Bankr. N.D. Cal. 1993) for the proposition that Defendant was the owner of the Assigned Receivables immediately prior to the filing of the bankruptcy petition.  (This is a charitable interpretation of Defendant's argument that "Debtor Still Owns Its Accounts Receivable

Under California Law and CCP Section 708.150." Even if Defendant's arguments were all-prevailing, the result would be that the receivables are owned by the bankruptcy estate or the debtor in possession, but certainly not the debtor).

*GOCO Realty Fund* is of no relevance here. In that case, a creditor held a deed of trust and assignment of rents with respect to a debtor's real property. Under the assignment of rents clause, the debtor "hereby absolutely and unconditionally assigns and transfers to [creditor] all the rents and revenues of the Property . . ." 151 B.R. at 245. At or around the time the underlying loan went into default, the debtor transferred approximately $725,000 to its attorneys. Shortly thereafter, the debtor filed a bankruptcy petition under chapter 11.

The issue before the bankruptcy court was whether a secured creditor's interest in rents continues after the debtor-trustor transfers rent proceeds to its attorneys as a retainer. In analyzing the issue, the bankruptcy considered and applied California Civil Code section 2938, dealing with absolute assignments of rents.

In this case, there is an assignment of accounts receivable, not rents, involving Code of Civil Procedure section 708.510, not Civil Code section 2938. A transfer of funds to Defendant's attorney is not implicated here. The bankruptcy court's conclusion in *GOCO Realty Fund* that a demand is required to enforce a conditional absolute assignment of rents is not relevant in this case.

**OTHER ARGUMENTS BY DEFENDANT RELATING TO THE ABSENCE OF A LEVY AND WRIT OF EXECUTION**

Defendant contends that Plaintiff was required to proceed against the Assigned Receivables by way of writ of execution and that its failure to do so renders the Assignment Order void and ineffective. It is indeed true that California law empowers a judgment creditor to enforce its judgment by obtaining a writ of execution, levying on certain types of the judgment debtor's property and then causing such levied-upon property to be sold with the sales proceeds being applied in full or partial satisfaction of the underlying judgment. These provisions are set forth in Chapter 3, Articles 1 through

7 of Division 2 of Title 9 of the California Code of Civil Procedure.  However, Defendant has failed to cite the Court to any controlling or persuasive authority that a writ of execution and/or a levy is required in connection with a proceeding by a judgment creditor under section 708.510.  Nor has the Defendant cited the Court to anything in section 708.510 or elsewhere in Article 6 (§§ 708.510-708.560) requiring that a judgment creditor obtain a writ of execution and/or a levy.  Furthermore, the statutory structure strongly implies that no such requirement exists.  Article 6 is part of Chapter 6, and Chapter 6 is prominently titled "Miscellaneous Creditors' Remedies."  The implication is, and there is every reason to believe, that these "miscellaneous" creditor remedies in Chapter 6 are <u>in addition to</u> other remedies, including writ of execution and levy, that are provided in Chapter 3 of Division 2.  All of this is confirmed by the California Legislative Comment on section 708.510 which states as follows:  "Section 708.510 . . . also provides an optional procedure for reaching assignable forms of property that are subject to levy, such as accounts receivable, general intangibles, judgments and instruments. . . . *This remedy may be used alone or in conjunction with other remedies provided in this title for reaching rights to payment, such as execution, orders in examination procedures, creditors' suits, and receivership."* (Italics added).

Defendant cites *Palacio Del Mar Homeowners Assn., Inc. v. McMahon*, 174 Cal. App. 4th 1386 (4th Dist. 2009) in support of its argument that Plaintiff's failure to proceed with a writ of execution and a levy renders the Assignment Order ineffective.  A review of the facts of this case shows that a judgment creditor obtained a postjudgment order under California Code of Civil Procedure section 708.205 directing the judgment debtor to turn over a website domain name to the judgment creditor.  Judgment debtor McMahon took an appeal from this decision and order.  The Court of Appeal reversed the superior court on the ground that "Section 708.205 does not allow the turnover of the domain name directly to [the judgment creditor] . . . It must be valued and sold."  174 Cal. App. 4th at 1390.  *Palacio* has no relevance here because Plaintiff did not proceed under section 708.205; it proceeded under section 708.510.

-13-

**DEFENDANT'S BAD FAITH ARGUMENT**

Defendant would have the Court conclude that Plaintiff filed this adversary proceeding in bad faith because "Plaintiff never had any facts and law to establish that it has the right to become an owner of Debtor's accounts receivable..." Amended Trial Brief of Advanced Biomedical, Inc., Docket No. 66, filed Nov. 6, 2015 at page 10, lines 3-4. On the contrary, faced with Defendant-Debtor's contention that the estate owned the Assigned Receivables, Plaintiff had good cause to commence this adversary proceeding by filing a complaint against Defendant-Debtor. Federal Rule of Bankruptcy Procedure 7001(1) includes within the definition of an adversary proceeding a proceeding to recover money or property (subject to certain exceptions not relevant here) and Rule 7001(9) includes in the same definition a proceeding to obtain a declaratory judgment relating to a 7001(1) action. Plaintiff's actions herein are both procedurally proper and in good faith in light of Defendant-Debtor's contentions, assertions and position with respect to the Assigned Receivables.

**SUMMARY AND CONCLUSION**

The Assignment Order indefeasibly and absolutely transferred title to the Assigned Receivables from Defendant. Under California law, this transfer of title occurred no later than the time and date of the Assignment Order's entry. California Code of Civil Procedure section 683.010 provides that a judgment is enforceable upon entry, and California Code of Civil Procedure section 680.230 defines "judgment" as a "judgment, order or decree entered in a court of this state." Here, the Assignment Order was entered on September 25, 2014, so the transfer of title to the Assigned Receivables occurred no later than this day.[3]

Plaintiff has proven by a preponderance of the evidence that it is the current owner of the Assigned Receivables (subject, however, to IRS tax liens) and that it became the owner of such property no later than September 25, 2014, the date of entry

---

[3] Plaintiff has asserted that under the relation back doctrine the transfer may relate back to an earlier date. However, the Court need not address that issue here because all that matters in this case is that the transfer of title occurred prepetition, which is amply shown above.

of the Assignment Order. As discussed above, Defendant's many arguments that the Assignment Order is not self-executing and absolute or is ineffective to transfer title to the Assigned Receivables to Plaintiff are unavailing. For these reasons, the Court grants judgment in favor of Plaintiff and determines that (1) Plaintiff acquired title to and became the owner of the Assigned Receivables no later than September 25, 2014 under the terms of the Assignment Order, (2) that no portion of the Assigned Receivables is property of Defendant-Debtor's bankruptcy estate, and (3) Defendant is permanently enjoined from using, collecting, transferring or in any way dealing with the Assigned Receivables except to the extent specifically authorized in advance by Plaintiff in writing in Plaintiff's sole and absolute discretion. Plaintiff shall lodge a form of judgment within 10 days of the date of entry of this Memorandum Decision and Order.

The Court makes no finding whatsoever as to the priority of the IRS tax liens with respect to the Assigned Receivables, nor does the Court make any finding about the adequacy or inadequacy of notice to the IRS in the Orange County Superior Court proceeding before Judge Fell that led to the entry of the Assignment Order.

In view of the Court's determination that the Assigned Receivables are not property of Defendant-Debtor's bankruptcy estate, the Court declines the invitation of the United States of America on behalf of the IRS to adjudicate the rights and priorities of Plaintiff and the IRS with respect to the Assigned Receivables on the ground that such adjudication would in no way affect the bankruptcy estate or its administration.

IT IS SO ORDERED.

###

Date: March 22, 2016

Mark S. Wallace
United States Bankruptcy Judge